# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNIFER C.[1]**, | Case No. 6:20-cv-1160-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Kevin Kerr, KERR ROBICHAUX & CARROLL, PO Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Jennifer C. seeks judicial review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying Plaintiff's application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under the Social Security Act (Act). For the following reasons, the Commissioner's decision is REVERSED AND REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for SSI on November 29, 2017, alleging disability beginning March 1, 2009. AR 13. Plaintiff's claim was first denied on January 30, 2018, and again upon

reconsideration on May 23, 2018. *Id.* Plaintiff filed a written request for hearing before an

Administrative Law Judge (ALJ). *Id.* The ALJ held a hearing on June 7, 2019, at which Plaintiff

amended the alleged onset date to November 19, 2017. AR 13, 44.

Plaintiff was born August 11, 1981 and was 36 years old on the amended alleged

disability onset date. AR 20. In a decision dated June 25, 2019, the ALJ found that Plaintiff was

not disabled. AR 22. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied

Plaintiff's request for review, making the ALJ's decision final. AR 1. Plaintiff seeks judicial

review of the ALJ's decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

> 1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
>         §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
>         significant mental or physical duties done or intended to be done for pay
>         or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
>         such work, she is not disabled within the meaning of the Act. 20 C.F.R.
>         §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
>         substantial gainful activity, the analysis proceeds to step two.
>
> 2.      Is the claimant's impairment "severe" under the Commissioner's
>         regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her application and alleged onset date, November 19, 2017. AR 15. At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, scoliosis, chronic pain, tennis elbow, and carpal tunnel syndrome. *Id.* The ALJ found that those medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities as required by Social Security Ruling (SSR) 85-28. *Id.* Also at step two, the ALJ determined that the following claimed impairments were not severe: asthma, anxiety and depression, and mental functioning. AR 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments required in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 17.

The ALJ next determined Plaintiff's RFC. The ALJ found Plaintiff to have an RFC to perform sedentary work, which consists of lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. AR 18; 20 C.F.R. § 416.967(a). The ALJ included the following additional limitations: occasionally balance, stoop, kneel, and crouch, but never crawl; occasionally climb ramps and stairs, but

never climb ladders, ropes, or scaffolds; requires a handheld device for ambulation, walking on uneven terrain, or ascending or descending slopes; only handle with the bilateral upper extremities; no exposure to workplace hazards such as machinery or unprotected heights; only short simple written or instructions that required no General Education Development (GED) reasoning level of two, and learned in 30 days or less. AR 18. The ALJ found that the medical record did not support the severity of Plaintiff's symptoms, and specifically noted that her range of motion was only mildly limited, and she had intact muscle strength, sensation, reflexes, and muscle tone. AR 19. The ALJ additionally noted that Plaintiff had not "generally received the type of medical treatment one would expect from a totally disabled individual" and that Plaintiff's "alleged limitations are not fully supported by her reported activities." *Id.* Specifically, the ALJ noted that Plaintiff "indicated that he [sic] could perform adequate self-care, prepare simple meals, drive a car, and use a computer," as well as "go out to watch movies, and attend jury duty." *Id.*

At step four, the ALJ found that Plaintiff could not perform any past relevant work as a meat cutter, fast food worker, or woodworking shop hand. AR 20. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found Plaintiff able to make a successful adjustment to other work that exists in significant numbers in the national economy, specifically as an Addresser, Polisher Eyeglass Frames, or Table Worker. AR 21. As a result, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 22.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) rejecting the opinions of Plaintiff's medical sources; (B) rejecting certain of Plaintiff's severe impairments at step two; (C) failing to conduct an adequate analysis at step three regarding whether Plaintiff's impairments met or equaled a listing; (D) improperly discounting Plaintiff's subjective symptom testimony; (E) improperly

evaluating Plaintiff's testimony from lay witnesses; and (F) finding that the Commissioner had met her burden at step five.

## A.  Plaintiff's Medical Sources

Plaintiff filed her application for benefits on November 29, 2017. AR 13. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and the source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not

identical. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(b)(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Plaintiff argues that the ALJ improperly rejected the opinions of her treating providers, Dr. Peter Leavitt, MD, and Nurse Debbie Rief-Adams, FNP. On October 3, 2016, Dr. Leavitt submitted a medical source statement on a check-box form, which noted that Plaintiff can stand or walk for 30 minutes, but for less than two hours total in an eight-hour day. AR 586. Dr. Leavitt also described that Plaintiff is limited to sitting for one hour at a time for a total of less than two hours during an eight-hour day, and that she must change positions and lie flat during the day. AR 586-87. In Dr. Leavitt's opinion, Plaintiff is limited to occasionally lifting or carrying less than ten pounds, but is unable to lift or carry any amount of weight frequently. AR 586. Dr. Leavitt concluded that Plaintiff would not have impaired attention and concentration during the workday. AR 588. Dr. Leavitt noted that he would expect Plaintiff to miss 16 hours or more of work per month due to pain. *Id.*

On May 16, 2019, Nurse Rief-Adams also provided a medical source statement on a check-box form, making many of the same observations as Dr. Leavitt. AR 913-16. Nurse Rief-Adams also noted that she would expect Plaintiff to miss 16 hours or more of work per month due to pain. AR 916. Nurse Rief-Adams described that it is medically necessary for Plaintiff to be able to sit and stand at will, due to fluctuating pain levels caused by her conditions, and that it is also medically necessary for Plaintiff to lie down and recline during the day for four to eight hours, because Plaintiff's pain is constant and limits her ability to move freely. AR 915. Nurse Rief-Adams, however, opined that Plaintiff would have impaired attention and concentration for "100% (6-8 hours)" of the workday. AR 915.

In rejecting both Dr. Leavitt and Nurse Rief-Adams' opinions regarding Plaintiff's limitations, the ALJ stated:

> The undersigned is not persuaded by the opinions provided by Dr. Peter Leavitt, M.D., and Debbie Rief-Adams, FNP. While [Plaintiff] has had some positive straight-leg tests, the extreme limitations outlined here are entirely inconsistent with the mild to moderate objective finding in the record, as well as the conservative approach to treatment.

AR 20 (citations omitted). The ALJ concluded that, "[w]hile [Plaintiff] does have some limitations, the objective medical record is not consistent with the extent of the limitations he [sic] alleged." *Id.* The ALJ was, instead, persuaded "by the opinions provided by the state agency medical consultants, who indicated that [Plaintiff] could perform a reduced range of sedentary work." *Id.* The ALJ noted:

> These opinions are generally consistent with record, which showed some tenderness to palpation with mildly decreased range of motion, a positive Spurling's test, and a variable gait, but otherwise normal coordination, five out of five muscle strength, with intact sensation, reflexes, and muscle tone; however, the undersigned has added some additional manipulative restrictions based upon the claimant's more recently diagnosed carpal tunnel syndrome.

*Id.*

The ALJ earlier in her opinion described Plaintiff's medical record and generally conservative treatment by these providers, including ultimately relying on a medication regime after trialing other treatments such as injections, chiropractic treatments, and physical therapy. The ALJ cited many parts of the record. Later, in specifically addressing the opinions of Dr. Leavitt and Nurse Rief-Adams, the ALJ did not repeat any of this discussion or cite any of the evidence. Plaintiff argues that the ALJ's general statement in discounting these medical opinions is legally insufficient. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the

preponderant conclusions mandated by the objective findings does not achieve the level of

specificity our prior cases have required, even when the objective factors are listed seriatim.").

Under the new regulations, an ALJ still "must nonetheless explain with specificity how

he or she considered the factors of supportability and consistency in evaluating the medical

opinions. That explanation must be legitimate, as the Court will not affirm a decision that is

based on legal error or not supported by substantial evidence." *Terry B. v. Acting Comm'r of Soc.

Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021) (citation omitted); *see also Carrie R.

v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) ("The new regulations do not, however,

upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain

binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in

discounting a medical opinion. Nor may ALJs dismiss a medical opinion without providing a

thorough, detailed explanation for doing so . . . . In other words, while the new regulations

eliminate the previous hierarchy of medical opinion testimony that gave special status to treating

physicians, ALJs must still provide sufficient reasoning for federal courts to engage in

meaningful appellate review." (citations omitted)).

Assuming without deciding that the ALJ's specific discussion of the opinions of

Dr. Leavitt and Nurse Rief-Adams was erroneous, "[a]n error is harmless if . . . the agency's path

may reasonably be discerned, even if the agency explains its decision with less than ideal

clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quotation marks

omitted). The Court can reasonably ascertain the ALJ's path regarding the opinions of

Dr. Leavitt and Nurse Rief-Adams by considering the ALJ's earlier discussion of Plaintiff's

objective medical record and treatment. AR 19. This discussion and analysis is supported by

substantial evidence. Although Plaintiff's proposed interpretation of the record may be rational,

so is the ALJ's interpretation of the record. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

## B.  Plaintiff's Impairments at Step Two

At step two, the claimant bears the burden of establishing that he or she has a severe impairment by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923). Thus, if the ALJ determines that a claimant has any severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-8p, *available at* 1996 WL 374184; *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). When an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless where the ALJ discussed the impairment during later steps). A diagnosis alone does not establish the severity of an impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "Step two is merely a threshold determination meant to screen out weak claims." *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987).

Here, the ALJ found the following impairments severe at step two: degenerative disc disease, scoliosis, chronic pain, tennis elbow, and carpal tunnel syndrome. AR 15. The ALJ found Plaintiff's asthma, depression, and anxiety non-severe. AR 16. Plaintiff argues that her

thoracic disc displacement, cervical radiculopathy, and lumbar radiculopathy are specific conditions that were ignored by the ALJ and result in pain, numbness, and weakness in Plaintiff's upper and lower extremities. The ALJ, however, discussed  Plaintiff's complaints of her "neck, mid back and low back pain, with some radiation down her right leg, and left lower extremity weakness" when evaluating Plaintiff's claims. AR 19. The ALJ also discussed Plaintiff's alleged numbness and weakness in her hands based on her alleged carpal tunnel syndrome, but regardless of whether the alleged problems in her upper extremities were from carpal tunnel, the ALJ evaluated Plaintiff's alleged upper extremity problems. AR 19-20. Thus, even if the ALJ erred in failing to consider these issues at step two, any such error was harmless.

## C. Step Three Analysis

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's severe impairments, either separately or in combination, meet or equal one of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii); *see* 20 C.F.R. Part 404, Subpart P, App. 1. To demonstrate that a claimant's impairment is the medical equivalent of one of the listed impairments, the claimant must present medical findings equal in severity to all the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis omitted); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The ALJ must consider the relevant evidence to determine whether a claimant's impairment meets or equals a listing. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). While the ALJ need not make formal "findings" at step three, boilerplate language "is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]." *Id.* at 512-13.

In this case, the ALJ found that Plaintiff did not meet any of the listed impairments. The ALJ found as follows:

While the medical evidence of record shows evidence of degenerative disc disease, the claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication. The claimant's impairment does not meet these conditions.

As to the claimant's carpal tunnel syndrome, the undersigned notes that there is no specific listing for carpal tunnel syndrome. However, listings 11.00C (neurological disorders) and listing 11.00B can serve as a guide for evaluating carpal tunnel syndrome. Listing 11.00C, as related to carpal tunnel syndrome, essentially requires documented evidence of persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, or ataxia and sensory disturbances, or interference with the use of fingers, hands and arms. Listing l.00B, as it pertains to the claimant's carpal tunnel syndrome, essentially requires documented evidence that the claimant is unable to use his [sic] upper extremities effectively to be able to carry out activities of daily living. In this case, the medical evidence of record does not demonstrate clinical findings showing that the claimant is unable to use his [sic] upper extremities effectively. The undersigned therefore finds that the claimant's carpal tunnel syndrome is not of listing level severity.

AR 17.

Plaintiff argues that the ALJ failed to conduct an adequate analysis and improperly found that Plaintiff's impairments do not meet or equal a listing at step three. Specifically, Plaintiff argues that the ALJ erred in (1) failing to conduct any analysis at step three, (2) failing to consider whether Plaintiff's impairments equal Listing 1.04A, (3) failing to consider Listing 11.02 for Plaintiff's migraine headaches, (4) failing to consider Listing 11.14 for her bilateral carpal tunnel syndrome and cervical radiculopathy and (5) failing to consider her

impairments in combination, and (6) failing to find Plaintiff disabled as meeting or equaling

Listings 1.02B, 1.04A, 11.02, and 11.14, singularly or in combination.

### 1. Whether the ALJ performed sufficient analysis

Plaintiff argues first that the ALJ erred in simply inserting boilerplate language, with no

consideration of the record, to conclude that Plaintiff's impairments do not meet Listing 1.04A.

Plaintiff notes that the ALJ even referred to Plaintiff's gender incorrectly on several occasions,

arguing that this shows that the ALJ simply copied the analysis from another opinion and did not

perform an analysis on Plaintiff's specific condition. The Commissioner responds that the ALJ

sufficiently considered the evidence, and that Plaintiff did not present any argument or evidence

to the ALJ that her impairments met or equaled a listing and fails plausibly to present an

argument that her condition meets the criteria of Listing 1.04A.

To meet or equal Listing 1.04A for Disorders of the Spine, Plaintiff must demonstrate

that she suffers from the following:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in compromise
> of a nerve root (including the cauda equina) or the spinal cord.
> With:
>
> A. Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or muscle
> weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test
> (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

The ALJ's blanket statement that "the record does not demonstrate compromise of a

nerve root . . . with evidence of nerve root compression," is not precisely accurate. Both

Dr. Leavitt and Nurse Rief-Adams checked a box on their respective forms stating that

Listing 1.04A applied. AR 586, 914. At the hearing, the ALJ asked Plaintiff's attorney whether there was "any imaging that shows compression of a root." AR 31. Plaintiff's attorney responded that "both of [Plainitff's] treating physicians have attested that she does have the compromise of the nerve root for the listing 1.04 in their questionnaire," but acknowledged that most of Plaintiff's imaging was rather old due to insurance issues. *Id.* The ALJ in her decision did not specifically address Dr. Leavitt's or Nurse Rief-Adams's conclusions regarding Listing 1.04A.

The evidence in the record is that Plaintiff had at least one "positive [bilateral] straight leg lift test." AR 867, 874 (July 2, 2018 chart note). This chart note, however, does not indicate that Plaintiff had the positive straight-leg raising test in both sitting and supine positions, as required for Listing 1.04A. Further, the ALJ discussed this positive test several times in her opinion, including when discounting the opinions of Dr. Leavitt and Nurse Rief-Adams. *See* AR 19, 20. The ALJ noted that despite the positive leg-raise, the extreme limitations opined by Dr. Leavitt and Nurse Rief-Adams are "entirely inconsistent with the mild to moderate objective findings in the record, as well as the conservative approach to treatment." The Court has already held that any error made by the ALJ in rejecting the opinions by Dr. Leavitt and Nurse Rief-Adams was harmless. The ALJ's analysis was sufficient.

### 2.  Whether Plaintiff's impairments medically equal Listing 1.04A

In her second step three argument, Plaintiff contends that the ALJ failed to consider whether her impairments medically equal Listing 1.04A. "If a claimant's impairment does not *meet* the criteria specified in the listings, he or she is still disabled if the impairment *equals* a listed impairment." *Lewis*, 236 F.3d at 514 (simplified, emphases added).  The Commissioner points out that whether an impairment "meets" or "equals" a listing is a different inquiry, and that Plaintiff only argued to the ALJ that her impairments *met* Listing 1.04A, not that they *equaled* Listing 1.04A. At Plaintiff's hearing before the ALJ, her attorney described that Plaintiff

"had multiple treating providers and acceptable medical sources who have attested that she *meets* [L]isting 1.04 for a spinal condition." AR 31 (emphasis added); *see also* AR 53 (reiterating that "many acceptable medical sources . . . [have] all kind of attested that she meets [L]isting 1.04").

"An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. As described above, the ALJ's analysis of whether Plaintiff met Listing 1.04A was sufficient. Plaintiff did not provide any distinct argument regarding whether her impairments *equal* the listing at issue—either singly or in combination—as opposed to meeting the listing. *See Lewis*, 23 F.3d at 514 (concluding first that the ALJ sufficiently considered whether the plaintiff *met* the listing, and then concluding that the ALJ's failure to consider *equivalence* was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment). The ALJ, therefore, did not err in failing to consider whether Plaintiff's impairments equaled Listing 1.04A, where Plaintiff did not offer any distinct theory to that effect and the ALJ properly considered whether Plaintiff met the listing.

### 3. Migraines

Regarding her third argument, Plaintiff argues that the ALJ erred in failing to find Plaintiff met Listing 11.02 for migraine headaches. Plaintiff, however, did not allege disability due to migraines and did not describe migraines or headaches in her hearing. The Court generally does not assign to an ALJ the duty to investigate potential impairments that the claimant does not allege are disabling. *See, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (finding that ALJ did not err in failing to obtain evidence concerning a condition that claimant did not allege); *Rask v. Astrue*, 2011 WL 5546935 at *15 (D. Or. Nov. 14, 2011) ("In most cases, the court would not assign to an ALJ the duty to investigate potential diagnoses that the claimant does not

suggest herself. It is reasonable for an ALJ to assume that a claimant is not impaired by a condition that she does not allege impairs her."). Here, the ALJ did not err by failing to determine whether Plaintiff's migraines met or equaled a listed impairment where Plaintiff did not allege disability on that basis or make any arguments to that effect to the ALJ.

### 4. Listing 11.14 and impairments in combination

Plaintiff did not provide any support, either in her materials provided to the ALJ or in her briefing before this Court, regarding her fourth or fifth arguments. Rather, with respect to her fourth argument, she merely states summarily that the ALJ erred in failing to consider Listing 11.14 for her bilateral carpal tunnel syndrome and cervical radiculopathy. Plaintiff does not provide any record evidence that Listing 11.14 was asserted or discussed, and does not make any specific argument in her briefing before this Court regarding that listing. *See Burch*, 400 F.3d at 683 (describing that Plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations"). Similarly, regarding her fifth argument, Plaintiff never argued before the ALJ that her impairments in combination medically equaled the listing criteria, and she likewise does not make specific arguments before this Court on that point. *See Burch*, 400 F.3d at 683; *Lewis*, 236 F.3d at 514. Because Plaintiff failed to present arguments with any specificity regarding those Listings in her briefing, the Court does not address these objections. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an issue because the plaintiff "failed to argue [the] issue with any specificity in his briefing").

### 5. Disability finding and use of upper extremities

Plaintiff contends in her sixth argument that the ALJ erred in failing to find Plaintiff disabled as meeting or equaling Listings 1.02B, 1.04A, 11.02, and 11.14, singly or in combination. Plaintiff additionally argues that the ALJ's finding that Plaintiff "can only handle

with the bilateral upper extremities," AR 18, means that she is incapable of performing fine

manipulation activities such as fingering and feeling. Plaintiff asserts that this finding means that

the ALJ erred in failing to conclude that Plaintiff's impairments meet the requirement of

Listing 1.02B, which covers certain joint dysfunction issues.

        As described above, the Court has already concluded that Plaintiff's assertion of error

with respect to Listings 1.04A, 11.02, and 11.14 fail. For the same reasons, Plaintiff's assertion

of error singly or in combination with Listing 1.02B fails. Plaintiff did not provide argument or

evidence that she met this listing to the ALJ and her assertions before this Court are minimal.

Thus, Plaintiff cannot prevail on this point. *See Burch*, 400 F.3d at 683; *Lewis*, 236 F.3d at 514;

*Carmickle*, 533 F.3d at 1161 n.2.

### D.  Plaintiff's Subjective Testimony

#### 1.  Standards

        A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

---

        [2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms

and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*

*v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however,

discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883

(9th Cir. 2006).

**2. The ALJ's Analysis**

The ALJ concluded that "[t]he medical record does not support the severity of

[Plaintiff's] symptoms," because Plaintiff's "statements concerning the intensity, persistence and

limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other

evidence in the record." AR 18-19. The ALJ explained:

> The above discussion of the treatment record shows that
> [Plaintiff's] allegations are not consistent with the medical record.
> Despite [Plaintiff's] spinal impairments[,] carpal tunnel syndrome
> and tennis elbow, her range of motion was only mildly limited, and
> she had a variable gait, with positive Phalen's and Tinel's signs,
> and a positive indication upon straight leg testing, bother [sic]
> otherwise she had intact muscle strength, sensation, reflexes, and
> muscle tone. Overall, [Plaintiff's] treatment has been very
> conservative, largely over-the-counter and prescription medication.
> She has not generally received the type of medical treatment one
> would expect for a totally disabled individual.

> [Plaintiff's] alleged limitations are not fully supported by her
> reported activities in the medical and other evidence of record.
> [Plaintiff] indicated that he [sic] could perform adequate self-care,
> prepare simple meals, drive a car, and use a computer. The record
> also indicated that [Plaintiff] was able to go out to watch movies,
> and attend jury duty. These activities indicate a higher level of
> function than that alleged by [Plaintiff].

AR 19 (citations omitted). Thus, the ALJ discounted Plaintiff's testimony because of her

activities of daily living, her conservative medical treatment, and because her claimed limitations

are not supported by the objective medical evidence.

### a. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's

activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A

claimant, however, need not be utterly incapacitated to receive disability benefits, and

completion of certain routine activities is insufficient to discount subjective symptom testimony.

*See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be

eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th

Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth

Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260

F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be

relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ cited to Plaintiff's function report, AR 225-32, for the conclusion that Plaintiff "could perform adequate self-care, prepare simple meals, drive a car, and use a computer." On review, however, the Court does not agree with the ALJ's characterization of Plaintiff's reports. Plaintiff reported that, after she gets her children ready for school, she lays on the couch until they return home. AR 226. In the evening, she relies on help from her son to prepare dinner, and then lays in bed the rest of the evening. *Id.* She reported that she gets the children "off to school and cook[s] dinner," but otherwise her significant other performs all other care tasks. *Id.* She described that she was only capable of cooking meals that took less than 10 to 15 minutes, and, even then, cooked only weekly. AR 227. Plaintiff additionally testified at her June 7, 2019, hearing that, when her significant other is unavailable, her son typically will "cook mac and cheese or make his sister dinner. And I kind of instruct from the couch." AR 41. While she reported that she did not need help with self-care tasks, such as dressing herself or using the toilet, *id.*, she reported that she is not able to do household chores, AR 228. She reported being able to drive and ride in a car, *id.*, but going nowhere regularly except doctor's appointments, AR 229. She reported that she used to "love" to shop, *id.*, but now shops only online for a few minutes every month for things her children need that her significant other is not able to find, AR 228.

Additionally, the ALJ found that Plaintiff's alleged limitations not fully supported by her reported activities in part because Plaintiff "was able to go out to watch movies, and attend jury duty." AR 19. The record reflects that Plaintiff once went to the movies, and when she tried to sit up, her knees would not bend. AR 889, 897. She reported that it took more than two hours for the swelling to go down. *Id.* The record does not contain any information suggesting that Plaintiff went to the movies on any other occasion before or after this incident. The record likewise reflects that Plaintiff missed one medical appointment on October 1, 2018, because of jury duty. AR 884. The record does not contain any additional information regarding the circumstances of that jury duty service, namely whether Plaintiff was able to participate with ease or encountered difficulties based on her alleged limitations.

Plaintiff's limited activities are the type the Ninth Circuit repeatedly has cautioned are not to be considered contrary to claims of disability. Social Security claimants cannot be expected to do nothing but sit in a dark corner or find themselves subject to discredited subjective testimony. *See Benecke*, 379 F.3d at 594; *Vertigan*, 260 F.3d at 1050; *Reddick*, 157 F.3d at 722. As discussed by the ALJ, Plaintiff's activities of daily living are not a clear and convincing reason to discount her subjective testimony.

### b.  Conservative Medical Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment

is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r,*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ's characterizations of Plaintiff's treatment history is limited. The ALJ observed

that Plaintiff's "treatment has been very conservative, largely over-the-counter and prescription

medication." AR 19. That is not a faithful characterization of Plaintiff's treatment history. The

record reflects in numerous places that Plaintiff had attempted a wide range of interventions for

her back pain, including physical therapy, chiropractic care, steroid injections, and consultations

with the physical medicine and neurosurgery departments. AR 568, 866, 873, 879-80, 884.

Those treatments, however, were reported as unsuccessful and Plaintiff's treating providers

placed her on a medication regime. In a different section of her decision, the ALJ described these

treatments, stating:

> By way of treatment, [Plaintiff] has tried multiple treatment
> modalities including a cane, bilateral wrist splints, physical
> therapy, chiropractic care, TENS therapy, steroid injections, nerve
> relaxers, as well as over-the-counter and prescription pain
> medication.

AR 19.

It does not appear that the ALJ considered Plaintiff's injections, chiropractic treatment,

TENS therapy, and physical therapy when concluding that Plaintiff receive "very conservative"

treatment. "[T]he Court cannot say that the ALJ's finding of conservative treatment is supported

by substantial evidence when [] potentially material treatment[s] [were] not, at least facially,

considered by the ALJ in reaching [her] conclusion." *Gary I. v. Kijakazi*, 2022 WL 220918, at *5

(C.D. Cal. Jan. 24, 2022); *see also Cartier v. Berryhill*, 2018 WL 922250, at *4 (W.D. Wash.

Jan. 30, 2018) ("Nevertheless, the ALJ's statement about Plaintiff's treatments is again

contradicted by the record, as Plaintiff has also engaged in both physical therapy and chiropractic

treatments—treatments the ALJ failed to mention."), *report and recommendation adopted by*

2018 WL 905616 (W.D. Wash. Feb. 15, 2018). "Further, courts have questioned whether injections, such as those Plaintiff received . . . are conservative treatment." *Guzman v. Kijakazi*, 2021 WL 6062645, at *9 (E.D. Cal. Dec. 22, 2021) (gathering cases). Thus, this reason is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's testimony.

### c.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because the Court has rejected the other reasons provided by the ALJ for discounting Plaintiff's testimony, the fact that Plaintiff's claimed limitations may not be supported by the objective medical record cannot, by itself, stand as the clear and convincing reason supported by substantial evidence sufficient to discount Plaintiff's subjective symptom testimony. Thus, the ALJ erred in her evaluation of Plaintiff's testimony.

## E.  Evaluation of Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th

Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper

basis for disregarding [lay witness] observations. The fact that lay testimony and third-party

function reports may offer a different perspective than medical records alone is precisely why

such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)

(citations omitted) (citing cases and concluding that "[a] lack of support from medical records is

not a germane reason to give 'little weight' to those observations.")).

　　An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d

at 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the

error is "'inconsequential to the ultimate nondisability determination' in the context of the record

as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-

63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not

describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony."

*Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative

of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

reached a different disability determination." *Stout*, 454 F.3d at 1056.

　　Here, Plaintiff's significant other submitted a letter, describing his perspective on

Plaintiff's conditions. AR 283. He described that he and Plaintiff had, at the time the letter was

written in May 2019, been in a relationship for more than 15 years. *Id.* He stated that Plaintiff

has "minimal use" of her arms and legs and that he must help her up the stairs to shower.

AR 282-83. He also explained that because of Plaintiff's inability to "do simple things like

walking, sleeping, sitting or standing for small periods of time," he is left to take care of their

two children, including "dishes, laundry, all meals, kid events," while also assisting Plaintiff with

things like getting to the shower. AR 282.

The ALJ devoted no discussion to Plaintiff's significant other's testimony, but rather

stated that the ALJ had "further considered the supportive statements and observations from

[Plaintiff's] significant other . . ., concerning the claimant's impairments and associated

decreased work capacity when determining the above residual functional capacity." AR 20. The

Commissioner concedes that the ALJ erred in not providing a rationale for discounting Plaintiff's

significant other's statements, but argues that this error is harmless because Plaintiff's significant

other's statements mirror Plaintiff's own allegations, which the Commissioner maintains were

properly discounted by the ALJ. The Court, however, has found that the ALJ erred in

discounting Plaintiff's subjective symptom testimony. Because the Court cannot apply the ALJ's

reasoning for discounting Plaintiff's testimony to the testimony of Plaintiff's significant other to

render the conceded error harmless, the error is not harmless.

**F.  Step Five Analysis**

At step five, the burden shifts to the Commissioner to show that a claimant can perform

other work that exists in significant numbers in the national economy. *Tackett v. Apfel*, 180

F.3d 1094, 1100 (9th Cir. 1999). The ALJ can meet his or her burden, in part, by obtaining the

testimony of a vocational expert (VE). Plaintiff challenges whether the specific jobs found by the

VE can be performed based on Plaintiff's RFC, and whether the ALJ erred in finding that those

jobs exist in sufficiently significant numbers. Because the Court has found that the ALJ failed

PAGE 27 – OPINION AND ORDER

properly to evaluate the testimony of Plaintiff and her significant other, the RFC and

hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. A

hypothetical posed to the VE must be complete and "include all of the claimant's functional

limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see

also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's

hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary

value." (simplified)). Thus, the ALJ erred in relying on the VE testimony that there were jobs

with significant numbers in the national economy that Plaintiff could perform. The Court,

therefore, need not reach Plaintiff's remaining arguments regarding the specific jobs found by

the VE at step five.

## G.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.

Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the

record is fully developed, the record is free from conflicts and ambiguities, and there is any

useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There are conflicts and ambiguities in the record that require further proceedings rather than an award of benefits, including between the testimony of Plaintiff and her significant other and the state agency consulting medical opinions about Plaintiff's impairments. Thus, the Court remands for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge